**United States Bankruptcy Court**
**Northern District of Illinois**

IN RE:

Sirack, George A.

Debtor(s)

Case No. 11 B 34297

Chapter 11

**FINAL RFPORT OF DEBTOR AS DEBTOR IN POSSESSION UPON CONVERSION OF CHAPTER 11 TO A CHAPTER 7 CASE PURSUANT TO RULE 1019(5)**

The undersigned, Debtor In Possession hereby makes this Final Report , and represents unto the Court as follows:

I. A petition under Chapter 11 of United States bankruptcy code was filed on August 22, 2011. The case was involuntarily converted to a case under Chapter 7 on November 29, 2011.

II. The Debtor In Possession faithfully and properly fulfilled the duties enumerated in 11 U.S.C. Section 1107.

III. All scheduled and known assets of the is date have been released to Ronald Peterson, the appointed chapter 7 trustee except for exempt property pursuant to 11U.S.C. Section 522 which has been released to the Debtor.

IV. The Debtor In Possession realized gross receipts as follows :

    a. Cash                                                          $3017.32

    b. The to hold will case receipts received during Chapter 11 case (including cash and and when the petition was filed                 $8562.57

    c. Cash balance on hand at date of conversion            $3115.88

    d. The balance on hand stated above is not subject to a security interest.

V Accounts receivable

    a. Full amount due the Debtor from other entities on the date the case was converted to a chapter 7 case $115,108.93

    b. The account receivable balance stated above is not subject to a security interest.

    c All accounts receivable due the Debtor from other entities on the date the case was converted to a chapter 7

case is as follows:

| Name and address of account obligor | Kind of obligation | Date of obligation | Amount due Debtor |
|---|---|---|---|
| Dr. Paul Rzeszutek<br>2200 Gladstone Court<br>Glendale Heights, IL 60139 | unpaid rentts | May 1, 2002 to<br>March 31, 2007 | $72,000.00 |
| Gloria Rosinia<br>1029 S. Racine Ave.<br>Chicago, IL 60607 | labor & materials | April to July 2008 | $ 21,621.43 |
| John Tashen , James Tashen,<br>Peter Tashen & Martin P. StonikasII<br>1612 Beach Ave.<br>Chicago, IL 60622 | unpaid rents | March 1, 2010 t0<br>December 31, 2010 | $15,787.50 |
| Victoria  Pakla<br>155226 Elder Court<br>Homer Glen, IL 60491 and<br>Alison Butkiewicz<br>18222 Dante Ave,<br>Lansing, IL 60438 | unpaid rents | April 1, 2010 to<br>August 31, 2010 | $5,700.00 |

**VI. Accounts Payable**

a. Total unpaid debts incurred during the Chapter 11 case

b. Itemization of all unpaid debts incurred during the chapter 11 case, including unsecured debts, secured debts, taxes, wages, administrative expenses, etc., but not including any prepetition debts:

| Name and address of unpaid entities | kind of debt | Date incurred | Amount unpaid |
|---|---|---|---|
| City of Chicago, Dept of Water Chicago, IL 60602 | water & sewer usage | July 1, to Sept 3, 2011 | $411.00 |
| Addison Court Condo. Assn. 1327 W. Addison St. Chicago, Il 60614 | Assn dues | Aug 1 to Nov 30, 2011 | $1,405.00 |

**VII . Original chapter 11 assests**

| Description of property | Values scheduled in schedules A & B | Value on date of conversion |
|---|---|---|
| See attached Schedules A & B Attached hereto | $893.177.43 | $893.177.43 |

**VIII New Chapter 11 Assets**                                    None

**IX Executory Contracts and unexpired leases**

a. Rejected                                                       None

b. New, Assumed , or not rejected see attache lease

The final report above, consisting of four pages and three exhibits has been prepared for and by the undersigned, who declaires under penalties of perjury that the statements contained therein are true and correct to the best of his knowledge,

information and belief.

Executed on February 14, 2012

_George Sirack_

George Sirack, Debtor in Possession

Milton A. Tornheim

Attorney for debtor in possession

555 Skokie Blvd.

Northbrook, IL 60062

(847) 897-5716

ARDC # 2847361

B6A (Official Form 6A) (12/07)

IN RE Sirack, George A.
                                      Debtor(s)                                                    (If known)

## SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| condominimum commonly known as 2049 W. Dickens Ave., Unit B, Chicago, IL 60647 | Fee Simple | | 175,000.00 | 113,000.00 |
| Condominium unit commonly known as 1327 W. Addison St., Chicago, IL 60614-unit 3A | Fee Simple | | 184,640.00 | 280,000.00 |
| Condominium unit commonly known as 2049 W. Dickens Ave., Chicago, IL-unit A | Fee Simple | | 75,000.00 | 0.00 |
| Single family unit commonly known as 1220 N. Noble Ave, Chicasgo, II | Fee Simple | | 56,432.00 | 0.00 |
| Two flat coordinating, namely knowing at 1232 N. Cleaver St., Chicago, IL | Fee Simple | | 275,000.00 | 288,810.00 |
| Vacant lot commonly known as 1216 N. Noble Ave., Chicago, IL | Fee Simple | | 70,140.00 | 0.00 |

TOTAL   836,212.00

(Report also on Summary of Schedules)

B6B (Official Form 6B) (12/07)

IN RE Sirack, George A.
_____    Case No. 11-34297
          Debtor(s)                         (If known)

## SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 1. Cash on hand. | | Cash | | 20.00 |
| 2. Checking, savings or other financial accounts, certificates of deposit or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | X | | | |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. Household goods and furnishings, include audio, video, and computer equipment. | | Four rooms of old used furniture | | 200.00 |
| 5. Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. Wearing apparel. | | Used men's wearing apparel | | 100.00 |
| 7. Furs and jewelry. | X | | | |
| 8. Firearms and sports, photographic, and other hobby equipment. | | Three-year-old mountain bike | | 100.00 |
| 9. Interest in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. Annuities. Itemize and name each issue. | X | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |

© 1993-2011 EZ-Filing, Inc [1-800-998-2424] - Forms Software Only

B6B (Official Form 6B)(12/07) - Cont.

IN RE Sirack, George A.
_____
Debtor(s)

Case No. 11-34297
_____
(If known)

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 15. Government and corporate bonds and other negotiable and non-negotiable instruments. | X | | | |
| 16. Accounts receivable. | | Claim against Dr. Paul Rzeszutek for unpaid rents | | 72,000.00 |
| | | Claim against Gloria Rosinia for labor and materials expended in her behalf. | | 21,621.43 |
| | | Claim for unpaid rents due from Tashen for unit , property commonly known as 1232 N. cleaver St Chicago IL 60642 | | 22,000.00 |
| 17. Alimony, maintenance, support, and property settlements in which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | | Claim for rents collected by John J. Leja belonging to the bankruptcy estate | | 12,450.00 |
| | | Personal injury claim arising out of exposure to asbestos | | unknown |
| 19. Equitable or future interest, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | 1998 Volvo S70 with 86,400 miles in fair condition | | 2,365.00 |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |

© 1993-2011 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

Case 11-34297   Doc 47   Filed 02/14/12   Entered 02/14/12 16:01:55   Desc Main
Document      Page 8 of 11

B6B (Official Form 6B) (12/07) - Cont.

IN RE Sirack, George A.

_____     Case No: 11 B 34297
Debtor(s)                                                              (If known)

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |
| | | | TOTAL | 130,856.43 |

(Include amounts from any continuation sheets attached.
Report total also on Summary of Schedules.)

_____ 0 continuation sheets attached

© 1993-2011 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

## APARTMENT LEASE FOR 1232 N. Cleaver Unit 1

| DATE OF LEASE | TERM OF LEASE | | MONTHLY RENT | SECURITY DEPOSIT |
|---|---|---|---|---|
| | Beginning | Ending | | |
| **July 10, 2011** | **August 1, 2011** | **July 31, 2012** | **$1,500.00** | **$2,250.00** |

**TENANT:**
NAME: **Marci Milkowski**

**LANDLORD:**
NAME: **George Sirack**
**630-709-9700**

**Security Deposit held at Fifth Third bank, 1209 N. Milwaukee Ave. Chicago Il 60622**

APT. NO.:     **1**
PREMISES  ADDRESS: **1232 N. Cleaver St.**
CITY:         **Chicago, Il 60642**

ADDRESS: **P.O. BOX 222001**

CITY:     **Chicago, Il 60622**

In consideration of the mutual agreements and covenants herein contained, Landlord hereby leases to tenant, and Tenant hereby leases from Landlord, for use as a private apartment, the Premises identified above, together with the fixtures, appliances, facilities and appurtenances belonging thereto, for the Term set forth above.

**ADDITIONAL COVENANTS AND AGREEMENTS.**
1. **Tenant shall mail rent to above address and received by the 1st of each month.**
2. **Rent is considered late after a 5-day grace period and a $50.00 late fee will be assessed per check that is late. This will be strictly enforced. Tenant has option to pay the $50 fee per check with the next months' rent or a tally will be kept and deducted from the security deposit.**
3. **Checks returned NSF bear a $45.00 bank fee plus late charges.**
4. **Lessor strongly recommends that Lessees obtain renters insurance.**
5. **Lessee is responsible for the upkeep of the smoke and carbon detectors. Utilities including cooking gas and electricity are the responsibility of the lessee.**
6. **Lessee needs to schedule walk thru before move-in and move-out.**

TENANT:

LANDLORD:

_____     Date          George Sirack     _____     Date
Marci Milkowski

### Lead Paint Disclosure (for housing building prior to 1978)
### Lead Warning Statement

Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing lessors must disclosure the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.

**Lessor's Disclosure**
(a) Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):
    (i) ___ Known lead-based paint and/or lead-based paint hazards are present in the housing  (explain) _____ _____ ___
    (ii) x Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.
(b) Records and reports available to the Lessor (check (i) or (ii) below):
    (i) ___ Lessor has no reports or records pertaining to lead-based paint and /or lead-based paint hazards in the housing. (List documents below). ___ _____ _____ ___
    (ii) x Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.
**Lessee's Acknowledgement (initial)**
(c) __ Lessee has received copies of all information listed above.
(d) __ Lessee has received the pamphlet *Protect Your Family from Lead in Your Home*.
**Agent's Acknowledgement (initial)**
(e) __ Agent has informed the Lessor of the Lessor's obligations under 42 U.S.C. 4852(d) and is aware of his/her responsibility to ensure compliance.
**Certification of Accuracy**
The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

_____          _____
Lessee     Marci Milkowski          Date          Lessor     George Sirack          Date

__ _____/_ _____Lessee(s) received City of Chicago Tenant Landlord Ordinance Summary

## LEASE COVENANTS AND CONDITIONS

**1. Rent:** Tenant shall pay Landlord or Landlord's agent, as rent for the Premises in the sum stated above, on the first day of each calendar month, in advance, at landlord's address stated above or as Landlord may designate in writing. All sums due and payable under this lease shall be deemed to be rent.

**2. Late Charges:** A charge in the sum of $25.00 shall be immediately due and payable by Tenant for each installment of rent not paid by the tenth day of the month to which such installment of rent applies. Any dishonored payment shall constitute a late payment retroactive to the date of tender by Tenant, and Tenant shall pay, as additional rent, $50.00 for each dishonored payment.

**3. Condominium Regulations:** Tenant shall fully comply with the Declaration, By-laws, Rules and Regulations of the condominium association to which the Premises is subject (the "Condo Documents") and any violation thereof shall constitute a material breach of the lease. Tenant shall pay, as additional rent, and indemnify and hold Landlord harmless for, all fines, penalties, assessments, judgments, levies, and all costs, expenses and attorneys' fees incurred by, or assessed against, landlord, by virtue of the violation of the Condo documents by Tenant, Tenant's co-occupants, invitees and guests. In the event of a conflict between the terms and provisions of this lease, and the terms and provisions of the Condo Documents, the terms and provisions of the condo Documents shall prevail.

**4. SECURITY DEPOSIT:** The Tenant has deposited with the landlord the above-described security deposit to be held by the landlord in accordance with state or local law or ordinance to secure the faithful performance by the Tenant of all provisions of the lease. Landlord may, to the extent permitted by state or local law or ordinance, apply allow or any part thereof in payment of any amounts due Landlord from Tenant, or to pay for any damages caused by Tenant, Tenant's co-occupants or guests, and upon Landlord's demand Tenant shall, in such case, if applied during the lease term promptly deposit with landlord such amounts as required to bring the security deposit up to the full amount stated above.

**5. CONDITION OF PREMISES:** Tenant's taking possession of the Premises shall be conclusive evidence of Tenant's receipt of the Premises in good condition except as otherwise specified, in writing, in the lease. The Tenant agrees that no representations as to condition or repair have been made by the landlord o his agent, nor any promise to decorate, alter, repair or improve the premises unless expressly written in this lease.

**6. LIMITATION OF LIABILITY:** Except as provided by state or local law or ordinance, landlord shall not be liable for any damage (a) occasioned by failure to keep Premises in repair; (b) for any loss or damage of or to Tenant's property wherever located in or about the Building or Premises, or (c) acts or neglect of other tenants, occupants or others at the Building.

**7. USE OF PREMISES:** tenant will not allow Premises to be used (a) for any purpose that will increase the rate of insurance thereon or (b) for any purpose other than for a residential Premise. Tenant will not permit Premises to be used for any unlawful purpose or for any purpose that will injure the reputation of the Building. Tenant will not permit anything to be thrown out of a window, or into any common area of the Building; nothing shall be hung from the outside of windows or placed outside any window sills, patio, deck or porch of the Building; no bird, dog, cat, or other animal shall be kept at the Premises without Landlord's express written consent; the common areas and porches shall not be used for laundry, cooking, sleeping, or storage of carriages, bicycles, furniture or other property of Tenant.

**8. ASSIGNMENT OF LEASE:** Except as provided for under any applicable statute or ordinance, the Tenant shall not assign this lease, or sublet the premises, voluntarily or by operation of law, excepting that in the event of Tenant's death family may continue to occupy said Premises, until the expiration or termination of the lease, by breach or by its terms.

**9. NO DISTURBANCE OF OTHER TENANTS:** the Tenant agrees not to play radios, television, stereo equipment, or any musical instruments, or make noise that will disturb other Tenants or occupants in the Building. The Tenant shall not cause or permit any damage to the Premises or property of Landlord or of any other person at the Building.

**10. APPLIANCES:** The Tenant shall not install or maintain in the Premises or in any part of the Building, any air conditioning, heating or cooling equipment, dishwashers or disposals, clothes washers, dryers or other appliances or equipment without first obtaining Landlord's written consent. Tenant shall use all appliances, only for the purposes, and in the manner, for which said appliances are intended, and shall keep all of same in clean condition.

**11. CARE OF PREMISES:** Tenant agrees to (1) maintain the Premises in compliance with the applicable municipal code; (2) keep the Premises in a clean and safe condition; (3) dispose of all rubbish, garbage and waste safely and cleanly; (4) keep plumbing fixtures in a clean condition; (5) use elevators and other facilities provided in the Building reasonably and fore the purposes intended; (6) not deliberately or negligently destroy, deface, damage or impair any part of the Premises or common areas of the Building, or allow any family member, co-occupants, or guests to do so. Failure to maintain care of the Premises and common areas as set forth herein shall be deemed a material breach of this lease.

**12. RIGHT OF ACCESS:** The Tenant shall permit Landlord access at all reasonable times, and upon such notice as may be required by state of local law or ordinance, to make reasonable inspections, repairs, maintenance, decorations, improvements and exhibitions; supply necessary or agreed services; or to determine Tenant's compliance with the provisions of this lease. Landlord shall have the right of immediate access without notice in case of emergence or where repairs elsewhere in the Building unexpectedly require access to Tenant's premises. Tenant's failure to provide such access shall be deemed a breach of this lease. Landlord may place upon the premises, signs of "For Sale" and "For Rent" and Tenant will not interfere with same.

**13. NO ALTERATIONS, SIGNS OR ADVERTISEMENTS:** tenant shall not alter nor make any additions to the Premises or the Building, or commit waste except for hanging of pictures, without the prior written consent of the landlord. If such permission is granted, then any alterations or additions to the Premises, such as lock, blots and fixtures shall remain as part of the Premises as Landlord's property unless the Landlord decides otherwise, and Tenant shall surrender keys therefore upon the termination of the tenancy. The Tenant shall not permit the display of any sign or advertisement in or about the Premises or Building without first obtaining the written consent of the Landlord.

**14. HOLDING OVER:** If the Tenant retains possession of the Premises, or any part thereof, after the termination of the lease by lapse of time or otherwise, the Landlord may, at Landlord's option, deem such holding over as constituting a month-to-month tenancy, upon the terms of this lease except at double the monthly rental specified under Section 1. Tenant shall also pay to Landlord all damages sustained by Landlord resulting from retention of possession by Tenant. In the event Landlord accepts a payment of rent for a period after the expiration of the within lease, as herein provided, in the absence of any specific written agreement, continued occupancy shall be deemed a month-to-month tenancy, on the same terms and conditions as herein provided, except for the double rent provision, to the extent permitted by state or local law or ordinance.

**15. HEAT AND HOT WATER:** The Landlord agrees, if the Building is designed for the purpose, to furnish such heat and hot water in sufficient quantities as may be required by law or ordinance during the term of this lease. If the Premises contain separate heating and/or hot water fixtures, then Landlord's sole obligation shall be to provide Tenant said fixtures in good operating condition at the inception of the tenancy, and Tenant shall be responsible for the utility costs for operation thereof.

**16. STORAGE OUTSIDE THE PREMISES:** Landlord shall not be liable for any loss or damage of or to any property placed in any common areas, storeroom or any storage place in the Building; such areas for storage, in any, being furnished gratuitously and not as part of the obligations of this lease.

**17. LIABILITY FOR RENT:** The Tenant shall continue paying rent and all other charges for said Premises to the end of the term hereof, whether or not the Premises becomes vacant by reason of abandonment, breach of the lease, wrongful termination by Tenant or if the Tenant has been evicted for breach of this lease, the extent said obligation for rent has not been mitigated, abated or discharged, in whole or in part, by any law or ordinance. Notwithstanding any of the provisions contained in this section, The Landlord shall make a good faith effort to relet the said Premises (but not in priority to other vacancies), and if the Premises is relet, Tenant shall be responsible for the balance of the rent, costs and expenses (including, but not limited to brokerage commissions, decorating costs, advertising costs and attorney's fee) in connection therewith.

**18. COVENANTS BINDING:** It is agreed that a breach of the covenants of this lease by the Tenant shall give the Landlord the right to terminate this lease or the right of possession upon notice as required by law or ordinance, and, that in the event of an assignment of his lease, with or without the express or implied consent of the Landlord, all the covenants therein contained shall be binding on the assignee to the same extent as if he had signed the lease. The consent to one assignment shall not be construed as consent to any further assignments.

**19. LEGAL EXPENSES:** Tenant shall pay all costs and attorneys' fees incurred by the Landlord due to Tenants' breach, and Landlord's enforcement, of the covenants or agreements of this lease.

**20. SURRENDER OF POSSESSION OF PREMISES:** the Tenant shall surrender possession, and keys, of said Premises, promptly upon termination of this lease, whether by reason of breach or expiration, with the Premises being in substantially the same condition as when Tenant assumed possession thereof, ordinary wear and tear excepted.

**21. OCCUPANCY REQUIRED:** Tenant agrees not to abandon said Premises, nor permit the Premises to remain vacant or unoccupied for a period of time, which could be construed as abandonment under sate or local law or ordinance.

**22. REMEDIES CUMULATIVE:** Landlord's remedies as provided herein are cumulative in nature and shall be in addition to, and not in lieu of, any and all other remedies granted to landlord by any state or local law or ordinance.

**23. IN CASE OF CASUALTY:** In case the Premises, Building or any part thereof shall be rendered untenantable by fire, explosion or other casualty, the respective parties hereto shall have all the rights provided by state or local law or ordinance. For the purposes of this section, landlord's good faith efforts to obtain insurance adjustments, settlements or awards to obtain sufficient funds to perform repairs required due to fire, explosion or other casualty shall be deemed diligent efforts to repair the Building within a reasonable time.

**24. SMOKE AND CARBON MONOXIDE DETECTORS:** Tenant acknowledges that at the time of obtaining possession of the Premises, all smoke detectors and carbon monoxide detectors required to be installed in the Premises have been installed and are in good working order. Tenant agrees to repair and maintain the smoke detector and carbon monoxide detector device(s) including replacement of the battery when necessary.

**25. GATES AND BARS ON DOORS AND WINDOWS:** The installation of any metal gates or bars on any doors or windows by the Tenant is expressly prohibited. Tenant shall pay for repair all damage caused by the removal of Tenant's installation and failure to do so shall constitute a breach of this lease, and Landlord shall be entitled to terminate the lease or right of possession, and shall be entitled to actual damages, costs and attorneys' fees therefore.

**26. MECHANICS' LIEN:** Tenant shall not place or allow to be placed on the Premises, the building or elsewhere on the real property, any mechanics lien, or any other claim for lien for any repairs, maintenance, alteration or modification performed by, or ordered or contracted by, the Tenant, whether or not same were rightfully performed or ordered by the Tenant. The placement of any such lien shall constitute a breach of this lease and upon ten (10) days' notice to cure said lien or lien claim, Landlord may terminate Tenant's tenancy or right of possession., In addition, Landlord shall have the right to satisfy and remove said lien without regard to the merits thereof and Tenant shall be responsible for the damages incurred in removing said lien, along with all other damages, costs and attorneys' fees incurred by Landlord in connection therewith.

**27 FALSE INFORMATION:** The Tenant warrants all the information given by him in applying for this lease to be true, and that the providing of false the information shall constitute a material breach of this lease. Occupancy by more persons as set forth in this lease, or the leased application, shall constitute a material beach of this lease.

**28. RULES AND REGULATIONS:** Tenant agrees to observe the Rules and Regulations contained in this lease, and any attachments and inclusions hereto as well as any further reasonable Rules and Regulations established by the Landlord during the pendency of this lease, and such Rules and Regulations are hereby incorporated into and made a part of this lease. Failure to observe said Rules and Regulations, or any of them shall be deemed to be a material breach of this lease and in event of such breach, Landlord shall be entitled to termination of the tenancy upon ten (10) days' notice, and shall further be entitled to such rights and remedies as are provided by applicable state or local law or ordinance.

**29. RECEIPT OF REQUIRD DOCUMETS:** Tenant acknowledges that the following documents have been received by Tenant, in accordance with federal, state or local law or ordinance, and that said disclosures are in proper form and have been fully made in accordance therewith; and said documents shall be deemed to be attached to and incorporated in this lease: a) federal lead-paint disclosure notice. b) A copy of the summary of the Residential Landlord and Tenant Ordinance if any as published by the appropriate local governmental authority

**30. JOINT LIABILITY:** If this lease is executed by only one spouse, both spouses shall be deemed personally liable therefore, pursuant to the applicable family expense doctrine or statute then in effect.

**31. SUBORDINATION OF LEASE:** This lease is subordinate to all mortgages which may now or hereafter affect the real property of which Premises forms a part. The recordation of this lease, of any memorandum thereof by Tenant shall constitute a material default of this lease.

**32. INTERPRETATION:** Masculine words shall be applicable to females and corporations, and singular words shall be interpreted as plural, as the situation may require, The words "Landlord" and "Tenant" wherever herein occurring and used shall be construed to mean "Landlords" and Tenants," in case more than one person constitutes either party to this lease; and all the covenants and agreements herein contained shall be jointly an severally binding upon, and inure to, themselves their respective successors, heirs, executors, administrators and assigns.

**33. SEVERABILITY:** If any clause, phrase, provision or portion of this lease, or the application thereof to any person or circumstance, shall be determined to be invalid or unenforceable under applicable law or ordinance, such event shall not affect, impair or render invalid or unenforceable the remainder of this lease nor any other clause, phrase, provision of portion hereof, nor shall it affect the applicability of any clause, provision or portion hereof to other persons or circumstances, and the lease shall be interpreted in accordance with said ordinance.

THESE RULES ARE FOR THE MUTUAL BENEFIT OF ALL TENANTS.

1.  No animals without the written consent of Landlord or agent (which may be revoked at any time). No animals without leash in any public area of the Building.
2.  No awnings or other projections including air conditioners, television or radio antennas or wiring shall be attached to, or be place outside the Premises.
3.  The Tenant shall not alter any lock or install a new lock or other attachment to any door of the Premises without the written consent of the landlord.
4.  No waste receptacles, supplies, footwear, umbrellas or other articles shall be placed in the hallways, or staircase landing.
5.  Running extension cord wiring for electrical appliances or fixtures in violation of the Municipal Code is prohibited.
6.  The water closets. basins and other plumbing fixtures shall not be used for any purpose other than for those for which they were designed; no sweepings, rubbish, rags or any other improper articles shall be thrown into them. Any costs or damage resulting from misuse of such facilities shall be paid for by the Tenant, as additional rent.
7.  There shall be no cooking done in or about the premises except in the kitchen
8.  Waterbeds are specifically prohibited, without Landlord's proper written consent.
9.  Landlord has the right to bar individuals from the Premises and Building, and if Tenant permits any barred individual to enter the Building or Premises, landlord shall have the right to press criminal charges against said individual's, and to terminate Tenant's lease, or right of possession, as a material breach of the lease.

GUARANTY

In consideration of Ten and no/100 ($10.00) dollars, and other good and valuable consideration, the receipt and sufficiency of which being hereby acknowledged, the undersigned hereby, unconditionally guarantees the full and faithful performance of all of the terms, covenants, conditions and provisions of this lease by Tenant, Tenant's heirs, successors, personal representatives, subleases and assigns.

_____ / _____